UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MICHAEL JAMES RYAN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. |
| ELN ENTERPRISES, LLC d/b/a MIDWEST CES, JACOB JOHNSEN, and DAVID FRANDSEN | ) ) ) ) |
| Defendants. | |

## DEFENDANTS ELN ENTERPRISES, LLC d/b/a MIDWEST CES, JACOB JOHNSEN, and DAVID FRANDSEN'S NOTICE OF REMOVAL

Defendants ELN Enterprises, LLC d/b/a Midwest CES ("Midwest"), Jacob Johnsen ("Johnsen"), and David Frandsen ("Frandsen" and collectively with Midwest and Johnsen as "Defendants"), by and through counsel, and pursuant to 28 U.S.C. §§ 1331, 1441 and 1442, 1446 hereby removes this action to the United States District Court for the Western District of Missouri. As grounds for this removal, Defendant states as follows:

1. On or about September 6, 2022, Plaintiff Michael James Ryan filed a Petition for Damages ("Petition") in the Circuit Court of Jackson County, Missouri entitled *Michael James Ryan v. ELN Enterprises, LLC d/b/a/ Midwest CES, Jacob Johnsen, and David Frandsen* Case No. 2216-CV20781 ("State Court Action").

2. This Notice of Removal is being filed within 30 days of the time the last Defendant first received notice, via of service of the Petition for Damages on October 17, 2022, of the grounds for removal of this case. Accordingly, this removal is timely. 28 U.S.C. §1446(b); *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344,

354-56 (1999) (30-day removal period begins to run upon service of summons and complaint).

3. The Petition asserts causes of action against Defendants for Tortious Interference with a Business Expectancy, Violation of the Missouri Merchandising Practices Act, Fraudulent Misrepresentation, Negligent Misrepresentation, Negligence Per Se, Defamation, Tot of Outrage, and Negligent Hiring, Training, and Supervision arising out of a medical examination performed in the course of Plaintiff's application for Social Security Administration ("SSA") disability insurance benefits (the "Consultative Examination").

4. Plaintiff alleges Defendants hired a medical professional to perform the Consultative Examination, and alleges the Consultive Examination was performed improperly, causing his application for SSA disability insurance benefits to be denied via Unfavorable Decision by the ALJ. Petition, ¶¶ 9-10, 12-16. Plaintiff alleges that, "on August 2, 2015, [Plaintiff] who served in the Air Force and Army, was severely injured in an automobile wreck as he was leaving the base on his last day of service." *Id*. at ¶29. Plaintiff alleges that he suffered significant physical and mental impairments from the crash and "was unable to maintain substantially gainful employment" since the accident. *Id*. at ¶¶ 30-34. As a result of these impairments, Plaintiff alleges he applied for SSA disability benefits. *Id*. at ¶ 35.

5. After his SSA disability benefits application was initially denied, Plaintiff states he requested a hearing before an ALJ. *Id*. at ¶¶ 37. The ALJ directed Plaintiff to Dr. Garrana for an Orthopedic Exam Whole body and Report on Plaintiff pursuant to his employer's contract with the SSA. *Id*. at ¶ 38.

6. Dr. Garrana performed the exam and submitted the requisite report to the ALJ, which was allegedly relied upon by the ALJ. *Id*. at ¶ 39.

2
Case 4:22-cv-00736-HFS   Document 1   Filed 11/08/22   Page 2 of 19

7. Despite the breadth of Plaintiff's causes of action, all his allegations concern the Consultative Examination conducted by Dr. Garrana pursuant to a contract with the SSA's state Disability Determination Services Department, which is fully funded by the Federal Government.

8. At all times, the Consultative Exam was performed by Dr. Garrana specifically at the direction of the SSA in accordance with specifications and regulations approved by the United States Government and under the direct supervision, control, orders, and directives of a federal officer acting under color of federal office.

9. This action is one which may be removed to this Court by Defendant on the grounds of federal officer removal jurisdiction pursuant to 28 U.S.C. §1442(a).

10. Additionally, this action is one which may be removed to this Court by Defendants based on federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims implicate significant federal issues and questions of federal law.

## I. Federal Officer Removal Is Appropriate Under 28 U.S.C. §1442(a)

11. Removal is proper under 28 U.S.C. §1442(a) when: (a) the defendant seeking removal demonstrates that it is a "person" within the meaning of the statute; (b) the defendant demonstrates a causal nexus between the defendant's actions taken pursuant to a federal officer's directions and under color of federal office, and the alleged claims and/or cross-claims; and (c) the defendant asserts a "colorable federal defense" to such claims and/or cross-claims. *Mesa v. California*, 489 U.S. 121 (1989); *Ruppel v. CBS Corp.*, 701 F.3d 1176 (7th Cir. 2012); *Mohler v. Air & Liquid Sys. Corp.*, No. 3:13-CV-1221-DGW-SCW, 2014 WL 2582843 (S.D. Ill. June 9, 2014); *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770 (E.D. Pa. 2010); *see also In re Methyl Tertiary Butyl*

*Esther Prods. Liab. Litig.*, 341 F.Supp.2d 351 (S.D.N.Y. 2004) (third-party indemnity complaint provides basis for federal officer removal jurisdiction).

12. Defendants are each considered a "person" within the meaning of 28 U.S.C. §1442(a). *See* 1 U.S.C. § 1 ("words importing the singular include and apply to several persons, parties, or things; words importing the plural include the singular… the words 'person' and 'whoever' include corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals.")

13. Defendants were "acting under" the direction of a federal agency and officer because he was directed by the SSA's ALJ to coordinate and provide for the medical examination of Plaintiff, which the SSA requires to properly review disability benefits applications, determine eligibility, and achieve its operational objectives.

14. There is a causal nexus between Plaintiff's claims and Defendants' allegedly tortious actions because Defendants' actions were taken pursuant to the SSA's direction and oversight. Pet. ¶¶ 38-39. *See* 20 C.F.R. § 404-1519p(a) ("[The SSA] will review the report of the consultative examination to determine whether the specific information requested has been furnished.").

15. The hurdle erected by the causal nexus requirement is "quite low". *Isaacson v. Dow Chem. Co.*, 517 F.3d 129 (2d Cir. 2008). "The words 'acting under' are to be interpreted broadly, and the statute as a whole must be liberally construed." *Id*. "To show causation, Defendants must only establish that the act that is the subject of Plaintiffs' attack … occurred while Defendants were performing their official duties. *See Willingham*, 395 U.S. at 409, 89 S.Ct. 1813; *see also State of Maryland v. Soper*, 270 U.S. 9, 33, 46 S.Ct. 185, 70 L.Ed. 449 (1926). Plaintiff's claim undoubtedly occurred when it arrived at the examination coordinated by Defendants and was examined by the

physician hired by Defendants. Defendants' actions all occurred while performing their official duties; namely, conducting a Consultative Examination as directed by the SSA.

16. Plaintiff asserts various claims against Defendants for a purported failure to properly conduct the Consultative Examination. Crucial to Plaintiff's claims are his allegations that Dr. Garrana failed to comply with applicable federal regulations, including the SSA's guidelines for conducting Consultative Examinations (*See* Pet. ¶¶ 47, 51-53, 57, 58, 60, 61, 71-80, 101-104), as well as Defendants' alleged actions in support of the cause of action for Tort of Outrage. (Pet. ¶¶ 174-181).

17. Defendants are entitled to federal officer removal under 28 U.S.C. §1442(a) based upon the colorable federal defense of derivative sovereign immunity as set forth in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940). *Yearsley* established that a government contractor, performing at the direction and authorization of a government officer, is immune from suit based upon performance of the contract in carrying out a government function. *See Yearsley*, 309 U.S. 18. Notwithstanding Plaintiff's allegations sovereign immunity; there is no exception to immunity for alleged errors in conducting the work. Here, the *Yearsley* doctrine is satisfied because the Consultative Examination at issue was arranged by Defendants and performed by Dr. Garrana pursuant to validly conferred authority by the SSA's ALJ (thus governed by the SSA's published guidelines and regulations), and Dr. Garrana's performance of a Consultative Examination was within the bounds of that authority.

18. Plaintiff's Petition expressly states that Defendants' actions took place as a contractor for the SSA. Pet. ¶ 6 ("DDS has a business relationship with Midwest CES in which Midwest CES physicians and personnel produce reports about disability claimants.").

19. If the SSA had performed the Consultative Examination itself, there is no question it would be immune from suit. The SSA's immunity extends to its contractors that act for its purposes. In other words, that immunity must be extended to Defendants, who, by virtue of the contractually conferred authority, stepped into the SSA's shoes. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."); *Nash v. Califano*, 613 F.2d 10, 15 (2d Cir.1980) ( "ALJs enjoy absolute immunity from liability in damages for actions taken in their quasi-judicial capacity."); *Raffinee v. Commissioner of Social Sec.*, 367 Fed.Appx. 379 381 (3d Cir. 2010)(Social Security Administration ALJ "enjoys absolute immunity from Raffinee's suit for damages because her claims are based on actions he took in his official capacity.").

20. Indeed, the SSA cannot be sued for torts such as those asserted by Plaintiff unless sovereign immunity has been waived. While 42 U.S.C. § 405(g) provides a limited waiver of the SSA's sovereign immunity for suits challenging final decisions of the SSA in connection with social security eligibility and benefits determinations, the statute does not waive immunity for all tort claims and no waiver exists for suits concerning the propriety and oversight of Consultative Examinations. *See Fabian v. Colvin*, No. 14–141, 2014 WL 3952803, at *4 (W.D.Tex. Aug. 13, 2014) (dismissing the discrimination, evidence tampering, emotional distress, and due process claims against the SSA on sovereign immunity grounds); *Cikraji v. Messerman*, No. 13–2059, 2014 WL 2965281 (N.D.Ohio June 30, 2014) (dismissing common law claims against the SSA on sovereign immunity grounds). *Glenn v. Social Security Admin.*, 110 F.Supp.3d 541 (D.N.J. 2015)

("Therefore, even though 28 U.S.C. § 1346 (i.e., the Federal Tort Claims Act or 'FTCA') generally waives sovereign immunity for certain tort actions against the United States (and assuming that Plaintiffs intended to rely upon this statute), the SSA cannot be sued directly under the FTCA.").

21. Plaintiff's Petition concedes Defendants actions were on behalf of the SSA's shoes by assuming duties owed by the SSA.

22. Moreover, 28 U.S.C. 1442(a) authorizes any federal agency, such as the Social Security Administration, to remove civil actions filed against it to federal court.

23. Courts must broadly construe Defendants' ability to remove under Section 1442(a) as to avoid frustrating its policy objective of "hav[ing] the validity of the defense of official immunity tried in a federal court" by applying a "narrow, grudging interpretation." *Willingham v. Morgan*, 395 U.S. 402, 407, 89 S.Ct. 1813, 23 L.Ed.2d 396 (1969); *see Sun Buick, Inc. v. Saab Cars USA, Inc.*, 26 F.3d 1259, 1262 (3d Cir.1994) (distinguishing the general removal standard from the standard applicable in cases removed pursuant to Section 1442(a)).

24. Removal of this case fulfills the federal officer removal statute's purpose of protecting persons who, through contractual relationships with the Government, perform jobs that "the Government itself would have to perform" in the absence of such a contract. *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 127 S.Ct. 2301, 2308, 168 L.Ed.2d 42 (2007). But-for contracts with private corporations Defendants, the SSA would have performed Plaintiff's Consultative Examination itself, an undoubtedly burdensome task. To alleviate this burden, the SSA enters contracts with private medical providers to act on its behalf. Indeed, Plaintiff's Petition states the purpose of the SSA's contract with Defendants is "to provide CEs and 'expedite the reporting process [of] disability physicals". (*See, e.g.,* Petition, ¶ 8.)

## II. Federal Question Removal Is Appropriate Under 28 U.S.C. §§1331 and 1441.

25. Removal is also proper pursuant to 28 U.S.C. §§ 1331 and 1441 *et seq.* because Plaintiff's claims present substantial federal questions.

26. The original jurisdiction of the district courts includes jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

27. "Whether a case 'arises under' federal law for purposes of § 1331" is governed by the "well-pleaded complaint rule." *Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830, 839 (2002). The artful pleading doctrine, however, "empowers courts to look beneath the face of the complaint to divine the underlying nature of a claim, to determine whether the plaintiff has sought to defeat removal by asserting a federal claim under state-law colors." *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am.*, 132 F.3d 824, 831 (1st Cir. 1997); *see also Lopez-Munoz v. Triple-S Salud, Inc.*, 754 F.3d 1, 5 (1st Cir. 2014) ("[T]he artful pleading doctrine allows a federal court to peer beneath the local-law veneer of a plaintiff's complaint in order to glean the true nature of the claims presented."). "In other words, a plaintiff may not, by the expedient of artful pleading, defeat a defendant's legitimate right to a federal forum." *BIW Deceived*, 132 F.3d at 831.

28. Even when state law creates the causes of action, a complaint may raise a substantial question of federal law sufficient to warrant removal if "vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808-09 (1986) (citation omitted); *see also Gully v. First Nat'l Bank*, 299 U.S. 109, 112 (1936) ("To bring a case within [§ 1441], a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action."); *Wullschleger v. Royal Canin*

*U.S.A., Inc.*, 953 F.3d 519, 522 (8th Cir. 2020) (concluding federal question raised where "Plaintiffs' dependence on federal law permeates the allegations such that the [claims purportedly brought under state law] cannot be adjudicated without reliance on and explication of federal law"); *Mikulski v. Centerior Energy Corp*, 501 F.3d 555, 565 (6th Cir. 2007) ("Under the substantial-federal-question doctrine, a state law cause of action may actually arise under federal law, even though Congress has not created a private right of action, if the vindication of a right under state law depends on the validity, construction, or effect of federal law").

29. Thus, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013); *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 315 (2005) (same). "Where all four of these requirements are met . . . jurisdiction is proper because there is a 'serious federal interest in claiming the advantages thought to be inherent in a federal forum,' which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn*, 568 U.S. at 258 (quoting *Grable*, 545 U.S. at 314).

30. As set forth below, this case meets all four requirements.

31. Although Plaintiff ostensibly pleads his theories of recovery against Defendants as state law claims, he bases the underlying theory of liability Defendants' alleged violations of federal regulations and guidelines, as well as alleged duties arising out of federal law, specifically Title II of the Social Security Act and related regulations, *i.e.*, that the Consultative Examination performed at the direction of the SSA ALJ was not completed in accordance with federal regulations and the SSA's guidelines, and that Defendants breached a duty allegedly owed by the SSA to applicants.

32. Federal regulations govern whether a Consultative Examination and Report is complete and adequate. *See* 20 C.F.R. § 404-1519p(a) ("[The SSA] will review the report of the consultative examination to determine whether the specific information requested has been furnished."); § 404.1519p(b) ("If the report is inadequate or incomplete, [the SSA] will contact the medical source who performed the consultative examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report."). Adjudication of whether Defendants properly completed the Consultative Examination requires consideration of how the SSA interprets and enforces these regulations.

33. Moreover, ensuring the propriety and quality of Consultative Examinations is a duty expressly assumed by the SSA under federal law. 20 C.F.R. § 404-1519p(d) ("[The SSA] will perform ongoing special management studies on the quality of consultative examinations purchased from major medical sources and the appropriateness of the examinations authorized.").

34. Plaintiff pleads that Defendants violated federal law with, among others, the following allegations:

    a. "The Report, the exam underlying the Report, and the conduct of Dr. Garrana and Midwest CES failed to comply with the appropriate rules and regulations regarding the conduct of a CE …. Pet. ¶ 60.

    b. "Midwest CES, Johnsen, Frandsen, and Dr. Garrana failed to comply with the directions and guidelines provided by the conferring authority, DDS." Pet. ¶ 61.

    c. Ryan believed Midwest CES, Johnsen, Frandsen, and Dr. Garrana would comply with applicable law… in the conduct of the examination and submission of the Report." *Id.* ¶ 94.

       d. "Ryan agreed to the CE because he reasonably relied on Midwest CES, Johnsen, Frandsen, and Dr. Garrana to comply with all legal and ethical duties …" *Id.* ¶ 106.

       e. *"*Midwest CES, Johnsen, Frandsen, and Dr. Garrana failed to prepare and conduct a CE that conformed with applicable law, regulations, and accepted medical standards.…." *Id.* ¶ 134.

       f. DDS was more likely to contract with Midwest CES, Johnsen, Frandsen, and Dr. Garrana if they arranged for and performed evaluations in a particular manner." *Id.* ¶ 167.

35. Plaintiff further incorporates federal law by repeatedly citing duties to perform the SSA in accordance with law and DDS standards." *Id.* ¶¶ 14, 55, 58, 74, 80, 94, 113, 114, 112, 129, 134-35, 137, 155, 158, 185, 186, 189, 192. The referenced laws and DDS standards refer to regulations and provisions from the SSA's Program Operations Manual System that govern Consultative Examinations.

36. Plaintiff also alleges that Defendants' purported failure to comply with federal regulations and guidelines caused Plaintiff "to sustain damages including, but not limited to, denial of Ryan's disability application causing Ryan to endure years of unnecessary and further administration of his claim, incur legal fees, and lose the time-value of his disability benefit payments." *Id.* ¶¶ 96, 108; *see also* Pet. ¶ 16 ("On December 3, 2018, the ALJ issued an unfavorable decision on Ryan's claim. The ALC assigned 'great weight' to the Report provided by Midwest CES to DDS.").

37. Plaintiff's claims are explicitly premised on federal issues regarding the existence, scope, and breach of the SSA's duties owed to applicants through its contractor's fulfillment of those duties. Thus, Plaintiff's claim requires the Court to determine the existence and scope of a federal agency's duties, as well as the federal

11

agency's immunity and whether those duties and that immunity is passed through to Dr. Garrana as a contractor for the agency.

38. Under the artful pleading doctrine, Plaintiff may not escape federal jurisdiction merely by omitting citations to the federal statutes and regulations that serve as the exclusive bases for Plaintiff's claims. *See Mikulski*, 501 F.3d at 560 ("[P]laintiffs may not avoid removal jurisdiction by artfully casting their essentially federal law claims as state-law claims.") (citations and quotation marks omitted). Where it appears that the plaintiff may have carefully crafted the complaint to circumvent federal jurisdiction, this Court should "consider whether the facts alleged in the complaint actually implicate a federal cause of action." *Id*. at 561; *see also Berera v. Mesa Med. Grp., PLLC*, 779 F.3d 352, 358 (6th Cir. 2015).

39. The federal question presented by Plaintiff's claims therefore is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258.

40. First, Plaintiff's state law claims "necessarily raise" a federal question because "[its] asserted right to relief under state law requires resolution of a federal question." *R.I. Fishermen's All., Inc., v. Rhode Island Dep't of Envtl. Mgmt.*, 585 F.3d 42, 49 (1st Cir. 2009); *see also Wullschleger*, 953 F.3d at 522 ("The face of plaintiffs' complaint gives rise to federal question jurisdiction and plaintiffs' isolated focus on their alleged state law claims is nothing more than an apparent veil to avoid federal jurisdiction."); *North Carolina ex rel. N.C. Dep't of Admin. v. Alcoa Power Generating*, Inc., 853 F.3d 140, 146 (4th Cir. 2017) ("Regardless of the allegations of a state law claim, 'where the vindication of a right under state law necessarily turns on some construction of federal law,' the claim arises under federal law and thus supports federal

question jurisdiction under 28 U.S.C. § 1331.") (alteration omitted); *PNC Bank, N.A. v. PPL Elec. Util. Corp.*, 189 F. App'x 101, 104 n.3 (3d Cir. 2006) (federal question necessarily raised where "the right to relief depends upon the construction or application of federal law") (citation omitted); *V.I. Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 916 (3d Cir. 1994) ("[A]n action under 28 U.S.C. § 1331(a) arises only if the complaint seeks a remedy expressly granted by federal law or if the action requires construction of a federal statute, or at least a distinctive policy of a federal statute requires the application of federal legal principles.") (emphasis added).

41. As pleaded, Plaintiff's claims require him to establish that (1) Defendants owed a duty to Plaintiff in his application for a program created, managed, and fulfilled by the government, (2) If those duties exist, that Defendants breached duties arising solely under federal law, federal regulations, federal programs, and SSA guidelines, (3) whether Defendants actions caused the SSA's ALJ to issue an Unfavorable Decision, and (4) the existence and scope of the SSA's duties purportedly owed to applicants. *See* 20 C.F.R. §§ 404.1519; 404.1519a-t (governing Consultative Examinations and SSA's oversight of the same).

42. Plaintiff's claims also require consideration and adjudication of the SSA's affirmative duty under 20 C.F.R. § 404.1519p to monitor and ensure Consultative Examinations are performed properly.

43. Based on the above, "it is not logically possible for [Plaintiff] to prevail on this cause of action without affirmatively answering the embedded question of whether federal law" required Dr. Garrana to conduct the Consultative Examination differently or whether he assumed the SSA's purported duties owed to applicants. *R.I. Fishermen's All.*, 585 F.3d at 49. "That is enough to make out a federal question." *Id.*; *see also Wullschleger*, 953 F.3d at 522 (concluding a federal question was presented where

"plaintiffs explicitly claim that defendants violated [federal law] [and] were non-compliant with [federal agency] guidance"); *Benjamin v. S.C. Elec. & Gas Co.*, 2016 WL 3180100, at *5 (D.S.C. June 8, 2016) ("While Plaintiffs' allegations of negligence appear on their face to not reference federal law, federal issues are cognizable as the source for the duty of care resulting from [the defendant's conduct].").

44. In sum, the Petition necessarily raises a federal issue—namely, whether Dr. Garrana properly performed the Consultative Examination, whether Defendants and Dr. Garrana's actions caused the SSA's ALJ to deny Plaintiff's disability benefits application, and whether Dr. Garrana breached duties purportedly owed by the SSA to applicants.

45. Second, this federal issue is "actually disputed" because the parties disagree as to Defendants' compliance with federal regulations and guidance, they disagree as to the existence and scope of duties owed by the SSA and/or Defendants, as they disagree as to whether Defendants' alleged actions caused any damages based on the ALJ's Unfavorable Decision in the SSA proceeding (and whether such damages are even recognizable). Indeed, these federal issues are the "central point of dispute." *Gunn*, 568 U.S. at 259.

46. Third, the federal issue presented by Plaintiff's claims is "substantial." "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. Among other things, the Court must assess whether the federal government has a "strong interest" in the federal issue at stake and whether allowing state courts to resolve the issue will "undermine the development of a uniform body of [federal] law." *Id.* at 260-62 (citation omitted). As the Supreme Court explained in *Grable*, "[t]he doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless

14
Case 4:22-cv-00736-HFS   Document 1   Filed 11/08/22   Page 14 of 19

turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." 545 U.S. at 312. "If even one claim in the complaint involves a substantial federal question, the entire matter may be removed." *Lee v. Borders*, No. 4:09CV1977 TIA, 2010 WL 3000065, at *1 (E.D. Mo. July 28, 2010).

47. Plaintiff's theories of Defendants' liability necessarily require that a Court determine the existence and scope of the SSA, whether participation in SSA's programs creates the basis for state tort and statutory claims, and/or Defendants' obligations under federal law because SSA disability proceedings are first and foremost a product of federal law. *See* 42. U.S.C. § 401 *et. seq*. Plaintiff's theories of Defendants' liability thus "involve aspects of the complex federal regulatory scheme applicable to" the Social Security Administration and disability insurance proceedings, *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 195 (2d Cir. 2005), and are "sufficiently significant to the development of a uniform body of [disability benefits] regulation to satisfy the requirement of importance to the federal system as a whole," *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1024 (2d Cir. 2014). Furthermore, "minimizing uncertainty over" the SSA's and physicians' obligations throughout SSA disability insurance benefits proceedings "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 317-18 (2d Cir. 2016); *see also PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (state law claim "raises a substantial federal question-the interpretation of" federal statute "over which the District Court properly exercised removal jurisdiction"); *R.I. Fishermen's All.*, 585 F.3d at 51 ("[T]here is a substantial federal interest in ensuring that actions taken in pursuance of [federal regulatory programs] receive the uniformity of interpretation that a federal forum

offers."). Thus, "[g]iven that . . . the plaintiffs' claims turn on the interpretation of the federal regulations governing" the SSA as well as sovereign immunity, "and the importance of those regulations to the Congressional scheme, this case plainly falls within the narrow swath of cases described in *Grable*." *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 174 n.5 (1st Cir. 2016).

48. Fourth, and finally, the federal issue also is capable of resolution in federal court "without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. Federal courts <u>exclusively</u> hear challenges to SSA proceedings and decisions. *See* 42 U.S.C. § 405(g) ("Such action shall be brought in the district court of the United States …."). Litigating this case in a state court runs the risk of the state court applying federal requirements and analyzing the duties of a federal agency inconsistently with the manner in which the federal agency tasked with reviewing disability insurance benefits applications—the SSA and its ALJs, as well as the federal courts reviewing ALJ decisions—apply them. If the SSA itself or its ALJ were sued, it would be entitled to remove this case to federal court. 28 U.S.C. § 1442(a). Federal jurisdiction is therefore "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (quoting *Grable*, 545 U.S. at 313).

49. In summary, removal of this action is appropriate because Plaintiff's "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see also, e.g., PNC Bank, N.A.*, 189 F. App'x at 104 n.3 (state law claim based on violation of Internal Revenue Code "gives rise to federal-question jurisdiction" under Grable); *New York ex rel. Jacobson*, 824 F.3d at 315–18 (state law claims based on

16
Case 4:22-cv-00736-HFS   Document 1   Filed 11/08/22   Page 16 of 19

defendant's alleged violation of Internal Revenue Code satisfy Grable); *NASDAQ OMX Grp., Inc.*, 770 F.3d at 1031 (state law claims premised on violations of Exchange Act "necessarily raise disputed issues of federal law of significant interest to the federal system as a whole"); *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("Although plaintiffs could lose their conversion claim without the court reaching the federal question, it seems that they cannot win unless the court answers that question. Thus, plaintiffs' 'right to relief necessarily depends on resolution of a substantial question of federal law.'") (citation omitted); *Broder*, 418 F.3d at 196 (state law claims premised on cable provider's alleged violations of Communication Act's uniform rate requirement satisfy "*Grable* test for federal-question removal jurisdiction"); *Ranck*, No. 3:16-cv-02409-AA, 2017 WL 1752954, at *5 (state law claims based on violations of Cable Communications Policy Act satisfy *Grable*).

50. To the extent that the Court determines that some, but not all, of Plaintiff's claims state a substantial federal question, the Court can evaluate whether to retain the non-federal claims against the Defendants under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a), which grants district court jurisdiction over state claims forming part of the same case or controversy. *See, e.g., S. Council of Indus. Workers v. Ford*, 83 F.3d 966, 969 (8th Cir. 1996).

### III. Procedural Compliance

51. Defendants satisfy the requirements for removal under 28 U.S.C. §1442 and, therefore, are entitled to remove this action.

52. Defendants satisfy the requirements for removal under 28 U.S.C. §§1331 and 1441 and, therefore, are entitled to remove this action.

53. Defendants will give notice of the filing of this Notice as required by 28 U.S.C. §1446.

54. In accordance with 28 U.S.C. § 1446(a) and the local requirements of this Court, Defendants hereby attaches a certified copy of the state court docket indicating all process, pleadings, and orders on file in the Circuit Court of Jackson County, Missouri to date, as **Exhibit A**.

55. Pursuant to Local Rule 3.2(a)(1), Defendants bring this matter in the Court's Western Division.

56. Pursuant to 28 U.S.C. § 1446(d), a true and complete copy of this Notice of Removal is being filed with the Clerk of the Circuit Court of Jackson County, Missouri.

**WHEREFORE**, Defendants remove this action to the United States District Court for the Western District of Missouri.

By: */s/ David A. Jermann*
David A. Jermann #51389
Armstrong Teasdale LLP
2345 Grand Boulevard, Suite 1500
Kansas City, Missouri 64108-2617
Telephone: 816.221.3420
Fax: 816.221.0786
djermann@atllp.com

ATTORNEYS FOR DEFENDANT

**CERTIFICATE OF SERVICE**

  I hereby certify that on November 8, 2022, the foregoing was filed electronically with the Court, with a copy served via electronic mail to the following:

Derrick Pearce
Kyle Sciolaro
103 West 26th Ave., #290
North Kansas City, MO 64116
dpearce@burnettdriskill.com
ksciolaro@burnettdriskill.com

Attorneys for Plaintiff

                 /s/*David A. Jermann*
                 Attorney for Defendant