IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| MICHAEL JAMES RYAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 22-0736-CV-W-HFS |
| ) | |
| ELN ENTERPRISES, LLC, et al., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**PLAINTIFF'S MOTION FOR REMAND AND RESPONSE TO DEFENDANT'S NOTICE OF REMOVAL**

COMES NOW Plaintiff Michael James Ryan, pursuant to 28 U.S.C. §§ 1331, 1441, and 1442 and Rule 81 of the Federal Rules of Civil Procedure, and states as follows:

**I. Statement of Facts**

1. In 2016, Ryan applied for disability benefits with the Social Security Administration ("Agency"). An administrative law judge ("ALJ") ordered an "Orthopedic Exam Whole Body and Report" consultative examination ("CE"). The Missouri state agency, Disability Determination Services ("DDS") scheduled that CE with Defendant Midwest CES. In 2018, Defendants and/or their agents, including physician Sherief Garrana, MD, performed the CE and prepared a written report.

2. The ALJ assigned "great weight" to the CE and denied Ryan's claim. After the Agency's Appeals Council denied Ryan's request for review, he filed suit against the Agency. This Court reversed and remanded Ryan's claim. *See Ryan v. Saul*, No. 4:19-cv-00772-BP, Doc. 21 (W.D. Mo. June 23, 2020) ("The Court does not intend to parse when a doctor is or is not qualified to render a medical opinion outside of his or her specialty. However, given the nature and history of Plaintiff's injuries, the ALJ saw a need for not just a

1

consultation, but a consultation conducted by a doctor within that specialty. In light of the ALJ's determination of the needs of the case, the Court cannot conclude that those needs were satisfied.")

3. Ryan received a new ALJ hearing in 2020. The ALJ afforded no weight to the CE and approved Ryan's claim.

4. On September 6, 2022, Ryan brought an action in Jackson County, Missouri state court against Defendants. Ryan alleges that Defendants knowingly made inaccurate statements about Ryan, did not comply with legal standards governing medical examinations, and prepared a report with template findings.[1] Ryan specifically alleges Defendants 1) tortiously interfered with a business expectancy; 2) violated the Missouri Merchandising Practices Act; 3) committed fraudulent misrepresentation; 4) committed negligent misrepresentation; 5) was negligent per se; 6) defamed Ryan by knowingly publishing false statements about him; 7) engaged in a civil conspiracy with Dr. Garrana by selling an inaccurate report that was favorable to its financial interests; 8) committed the tort of outrage; and 9) negligently hired, trained, and/or supervised Dr. Garrana. Doc. 1-1, Ex. A.

5. Ryan seeks damages for legal fees incurred in appealing his disability claim; the loss of

---

[1] This Court has repeatedly found Defendants' template findings to be "troubling" and remanded the claims for further review. *See, e.g.*, *Gatlin v. Kijakazi*, No. 4:21-cv-00421-DPR, Doc. 28 (W.D. Mo. Sept. 21, 2022) ("The Court finds Plaintiff's allegations regarding [the doctor's] report specifically, and Midwest CES's practices in general, to be very troubling."); *Norah v. Kijakazi*, No. 4:20-cv-00963-BP, Doc. 29 (W.D. Mo. April 15, 2022) ("[The allegations] are not merely disagreements with a doctor's opinion; instead, they suggest that the ALJ may have relied on a doctor's report of events that simply did not happen. Moreover, if these allegations are true then they may cast doubt on the entirety of the consulting doctor's report."); (Sealed) No. 4:20-cv-00686-MDH, Doc. 33 at 3-4 (W.D. Mo. Dec. 6, 2021) (characterizing the allegations as "troubling" and remanding the claim to consider the argument regarding the canned language); *Housewirth v. Kijakazi*, No. 5:21-cv-06080-MDH, Doc. 31 (W.D. Mo. July 18, 2022) ("Plaintiff's arguments raise an even greater concern regarding the potential fraud permeating the opinions relied upon by the ALJs in their administrative review."); *Elwell v. Kijakazi*, No. 4:21-cv-00704-MDH, Doc. 26 (W.D. Mo. July 18, 2022) (same).

2

the time-value of his disability benefit payments; compensatory damages; consequential damages for the loss of health care, for the costs of additional medical exams, and other expenses; reasonable attorney fees; pre-judgment interest; post-judgment interest; equitable relief; and for costs expended. Doc. 1-1, Ex. A.

6. On November 8, 2022, Defendants removed this matter from state court. Defendants assert they are federal officers with derivative sovereign immunity and that Ryan's causes of action implicate significant federal issues and questions of federal law. Doc. 1.

## II.     Legal Authority

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The federal officer removal statute permits a defendant to remove to federal court a state court action brought against the United States, any agency thereof, or any officer or any person acting under that officer sued in an official or individual capacity for any act under color of such office. *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 145 (2007) (citing 28 U.S.C. § 1442(a)(1)). When the removing party is not itself a federal officer or agency, § 1442(a)(1) permits removal only if Defendant, in carrying out the acts that are the subject of the complaint, was acting under any agency or officer of the United States. *Graves v. 3M Co.*, 17 F.4th 764, 768 (8th Cir. 2021) (internal citations and quotations omitted). A private person acts under a federal officer within the meaning of the statute where that person takes an effort to assist, or to help carry out, the duties or tasks of the federal superior, a relationship that typically involves subjection, guidance, or control by the federal officer. *Watson v. Philip Morris Cos. Inc.*, 551 U.S. 142, 151–52 (2007).

The party removing and opposing remand has the burden of establishing federal jurisdiction. *Green v. Ameritrade, Inc.*, 279 F.3d 590, 596 (8th Cir. 2002) (citing *In re Business*

3

*Men's Assur. Co. of America*, 992 F.2d 181, 183 (8th Cir. 1983)). Removal statutes are strictly construed to resolve any doubts regarding jurisdiction in favor of state court jurisdiction and remand. *Wilkinson v. Shackelford*, 478 F.3d 957, 963 (8th Cir. 2007). "[T]he party seeking removal has the burden to establish federal subject matter jurisdiction, and all doubts about federal jurisdiction must be resolved in favor of remand." *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1192 (8th Cir. 2015) (citations omitted). However, the typical presumption against removal does not necessarily apply for matters involving federal officer removal. *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021)

### III. Argument

#### A. Federal Officer Removal Is Not Appropriate

Defendants argue removal is appropriate because they are federal officers "acting under" the direction of a federal agency. Defendant contends Ryan's claim occurred while Defendants were performing their official duties. Doc. 1 at ¶ 13. Defendants argue they acted pursuant to the Agency's direction and oversight and invokes derivative sovereign immunity as a defense. Doc. 1 at ¶¶ 7-8, 12. Defendants, however, were contractors associated with another contractor (Missouri state agency, DDS). Defendants engaged in misconduct that negatively impacted both Ryan and the federal government. As such, federal officer immunity is not appropriate.

For Defendants to successfully invoke federal officer removal under 28 U.S.C. § 1442(a), they must establish that (1) they acted under the direction of a federal officer; (2) there is a causal connection between Defendants' actions and the official authority; (3) they have a colorable federal defense to the plaintiff's claims, and (4) they are "persons" within the meaning of the statute. *Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021) (citing *Jacks v. Meridian Res. Co.*, LLC, 701 F.3d 1224, 1230 (8th Cir. 2012)). Here, Defendants failed to act as directed by the ALJ and DDS. Further, there is not an adequate causal nexus between Defendants' acts that

4

were purportedly performed at the Agency's direction and the wrongs that Ryan alleges. Finally, it is not clear that Defendants have a colorable derivative sovereign immunity defense.

Defendants identify their official duties as conducting a CE as directed by the Agency. Doc. 1 at ¶¶ 8, 13. However, Defendants did not contract directly with the federal government, and it is unclear to what extent they contracted with any other related entity. Dr. Garrana voluntarily performed Ryan's CE for Midwest CES, who received instructions from a state agency, DDS.[2] Pet. ¶¶ 4, 6. "Although the federal law concerning the DDS–SSA relationship dictates the results to be accomplished by DDS, mandates certain levels of performance, and requires compliance with certain procedures and regulations, it does not supervise the detailed physical performance of DDS employees nor DDS's day-to-day operations." *Adelman v. Discover Card Servs., Inc.*, 915 F. Supp. 1163, 1165 (D. Utah 1996). Negligent acts of DDS employees are not considered to be acts of employees of the federal government. POMS DI 39518.055. Similarly, DDS employees are not employees of the federal government for purposes of the Federal Tort Claims Act. *Brown v. United States*, 573 F.Supp. 740 (M.D. Ala. 1982).

Contrary to Defendants' assertion, the Petition does not "expressly state[] that Defendants' actions took place as a contractor the SSA." Doc. 1 at ¶ 18. Here, DDS received the ALJ's request for Ryan's CE. DDS scheduled the exam with Midwest CES. DDS ordered Ryan to attend a physical CE. Pet. ¶ 4. The Agency's contracting relationship was primarily with DDS, which contracted with Midwest CES and/or Defendants. Pet. ¶ 6, 8. Defendants then contracted with moonlight resident physicians (such as Dr. Garrana) to perform CEs. Pet. ¶ 9. Defendants retained the right to control the manner and method by which the physicians performed the CEs. Pet. ¶ 11.

Defendants have not produced any agreement they had with the Agency or even DDS. Nor

---

[2] DDS is a division of the Missouri Department of Elementary & Secondary Education. https://dese.mo.gov/adult-learning-rehabilitation-services/disability-determination

have Defendants described the terms of any agreement. *See Cty. of Montgomery v. Atl. Richfield Co.*, No. CV 18-5128, 2019 WL 2371808, at *7 (E.D. Pa. June 5, 2019) ("Defendants have not alleged that they acted pursuant to government contracts which required them to produce or supply lead-based paint for the federal government to meet federal specifications. Nor do Defendants assert that there was any formal business relationship or contract between them and federal agents or officers such that Defendants could be deemed "authorized" to act on the federal officer's behalf in affirmatively executing duties under federal law.") (*aff'd*, 795 F. App'x 111 (3d Cir. 2020)). In fact, Defendants state they did not train Dr. Garrana and any training was provided by DDS. Answer ¶ 54-55, 57. This is at odds with the immunity Defendants attempt to invoke. It demonstrates Defendants did not step into the Agency's shoes. *See Bailey v. Monsanto Co.*, 176 F. Supp. 3d 853, 870 (E. D. Mo. 2016) (rejecting federal officer basis for jurisdiction where Defendants did not maintain that the manufacturing process itself was in any way supervised or controlled by the government). The Agency did not contract directly with Defendants, and neither the Agency nor DDS contracted with Defendants for a report containing inaccurate and falsified statements. Ryan seeks relief from this misconduct, not from the duties necessary to perform a legitimate CE.

      Defendants cite *Ruppel v. CBS Corp.*, 701 F.3d 1176 (7th Cir. 2012) and *In re Methyl Tertiary Butyl Esther Prods. Liab. Litig.*, 341 F.Supp.2d 351 (S.D.N.Y. 2004). Doc. 1 at ¶ 11. However, neither case fully supports their position. In *Ruppel*, the Court explained that a defendant acts under a federal officer where it is "working hand-in-hand with the federal government." 701 F.3d at 1182. Here, the government was not directly involved in Ryan's CE. DDS, the Agency, and the ALJ were not responsible for misstatements by Defendants and Dr. Garrana. Defendants do not explain how they were closely supervised by the federal government. *In re Methyl* involved gasoline producer defendants who alleged they acted at the express

6

direction of the federal government in adding MTBE to their product. 341 F.Supp.2d at 360. Here, Defendants' unlawful conduct was not directed or contemplated by a federal agency. And even if Defendants had an agreement with the federal government, that alone would not necessarily confer jurisdiction. *See Mayor & City Council of Baltimore v. BP P.L.C.*, No. 19-1644, 2022 WL 1039685, at *28 (4th Cir. Apr. 7, 2022) ("[W]e have little trouble concluding that the NEXCOM fuel supply agreements do not satisfy the "acting under" requirement. These agreements required Defendant Citgo to advertise, supply, and distribute gasoline and diesel to NEXCOM, which NEXCOM resold at a discount to "active duty military, retirees, reservists, and their families" at "service stations operated by NEXCOM on Navy bases located in a number of states across the country." Although Defendants contend that Citgo helped 'the Government to produce an item that it needs' by selling NEXCOM fuel for resale on Navy bases such logic would bring every seller of contracted goods and services within the ambit of § 1442 when the government is a customer.") (internal citations omitted).

Defendants assert that "[c]rucial to Plaintiff's claims are his allegations that Dr. Garrana failed to comply with applicable federal regulations, including SSA's guidelines." Doc. 1 at ¶ 16. This is mistaken. First, most of Ryan's causes of actions do not turn on specific regulations at all. He does not rely on violations of federal regulations. Defendants' citations point only to Ryan's allegations that Defendants and Dr. Garrana did not properly perform the exam. While Ryan does cite Mo. Rev. Stat. § 334.100.2. (Pet. ¶¶ 106, 122-23), this relates to protecting the public from physician misconduct. The Agency did not promulgate or police this regulation, and it does not dictate standards for CEs. The federal standards Defendants cite are not necessary elements for any of Ryan's causes of actions. Further, Judge Phillips already adjudicated violations when she found the CE was grounds for remand in Ryan's Social Security matter.

In *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770 (E.D. Pa. 2010), cited by

7

Defendants, the Court explained that a "defendant acts under a federal officer where his or her actions that led to the lawsuit were based on a federal officer's direct orders or comprehensive and detailed regulations." *Id*. at 784 (internal quotation and citations omitted). Here, Defendants did not operate on direct orders. Rather, the Agency's orders were to DDS, a state entity, which conveyed them to Defendants. However, "the presence of federal guidelines and regulations does not mean that all participants in an industry may invoke the federal officer removal statute." *Mackey v. Tower Hill Rehab., LLC,* No. 21 C 2608, 2021 WL 5050292, at *8 (N.D. Ill. Nov. 1, 2021). No federal authority required or compelled Defendants' actions and practices. No federal authority required or compelled DDS to engage Defendants. Dr. Garrana performed Ryan's CE in conjunction with his voluntary moonlighting relationship with Defendants, not the Agency. *See Kelly v. Monsanto Co., Solutia Inc.*, No. 4:15 CV 1825 JMB, 2016 WL 3543050, at *9 (E.D. Mo. June 29, 2016) (rejecting evidence of regulation compliance presented in support of federal officer jurisdiction and concluding "the evidence does not show that the manufacturing process was supervised or controlled by the government."); *Burford v. Monsanto Co.*, No. 4:16CV536, 2017 WL 1315800, at *4 (E.D. Mo. Apr. 10, 2017) (same). Had the Agency or DDS actually controlled the process, they would have obtained an actual orthopedic exam (as requested by the ALJ) rather than a boilerplate template produced by a moonlighting ear, nose, and throat resident.

      Defendants argue that had the Agency performed the CE, it would be immune from suit and that immunity must be extended to Defendants. Doc. 1 at ¶ 19-20. But Defendants' relationship with the federal government was not sufficiently close to characterize his role as "acting under" a federal agency or officer. Defendants were not meaningfully assisting a federal superior. Defendants were on a DDS panel of CE suppliers. They were not personally directed by the ALJ or a federal officer to perform the CE. Nor did a federal agency order Midwest CES or Dr. Garrana in particular to perform the CE. Neither SSA, DDS, nor the ALJ supervised the CE.

8

Defendants' attenuated relationship with the federal government by itself does not confer federal officer authority. *See Bd. of Cty. Commissioners of Boulder Cty. v. Suncor Energy (U.S.A.) Inc.*, 25 F.4th 1238, 1253–54 (10th Cir. 2022) (finding leases with the government, even containing complex regulatory requirements, do not bring a government contractor relationship within the meaning of § 1442 unless there is close supervision of the private entity by the government); *Washington v. Monsanto Co.*, 738 F. App'x 554, 555 (9th Cir. 2018) (Invoices between Monsanto and the government "do not show that the federal government supervised Monsanto's manufacture of PCBs or directed Monsanto to produce PCBs in a particular manner, so as to come within the meaning of 'act[ed] under.'"). At most, Defendants were subcontractors for DDS. *See State of Ohio v. Sherwin-Williams Co.*, No. 2:08-cv-00079, 2008 WL 4279579, * at 4 (S.D. Ohio Sept. 17, 2008) ("[T]here is no authority for the proposition that a subcontractor is entitled to the government contractor defense.").

Further, Ryan alleges Defendants produced a fraudulent report. Ryan's dispute is not with the Agency or DDS. Rather, Ryan has brought suit against Defendants for knowingly making inaccurate statements. Pet. ¶¶ 13, 15, 45, 47. This undermines the causal connection element of § 1442(a)(1). Defendant asserts that the Agency "enters contracts with private medical providers to act on its behalf" and that Ryan's Petition "states the purpose of the SSA's contract with Dr. Garrana is 'to provide CEs and expedite the reporting process [of] disability physicals.'" Doc. 1 at ¶ 24 (citing Pet. ¶ 8). First, Pet. ¶ 8 does not contain those allegations, and the quoted language does not appear in Ryan's Petition. Ryan did not allege Defendants contracted with SSA. Rather, he alleged that DDS, not the Agency, has a business relationship with Defendants. Pet. ¶ 6. Ryan alleged that DDS (at the ALJ's request) ordered him to attend the CE. Pet. ¶ 4. DDS selected Midwest CES as the contractor. Pet. ¶ 38. Defendants then worked with Dr. Garrana to falsely style a template CE as an authentic report. Pet. ¶ 12.

9

Defendants argue that they stepped into the Agency's shoes and are protected under a theory of sovereign immunity. Doc. 1 at ¶ 19. This is mistaken. First, although Defendants arranged with DDS for the CE and for the production of template report, it does not follow that Defendants' relationship with a state agency protects them on grounds of sovereign immunity. Second, a contractor is derivatively immune only to the extent the contractor is correctly carrying out its validly-conferred authority and is following government specifications. *Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 20-21 (1940). When a contractor violates the law and the government's instructions, derivative immunity does not shield a contractor from suit. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016). To the extent Defendants acted under validly conferred federal authority, Ryan disputes that Defendants correctly exercised that authority. Derivative sovereign immunity is not available to federal contractors who are plainly incompetent or knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). *See also Hafer v. Melo*, 502 U.S. 21, 29 (1991) ("officials seeking absolute immunity must show that such immunity is justified for the governmental function at issue"). Defendant has not established this fact.

Moreover, the United States allows waiver of its sovereign immunity from suit in the Federal Tort Claims Act. *See FDIC v. Meyer*, 510 U.S. 471, 475 (1994). 42 U.S.C. § 1983 affords redress against a person who, under color of state law, deprives another person of any federal constitutional or statutory right. *Omni Behav. Health v. Miller*, 285 F.3d 646, 650–51 (8th Cir. 2002). DDS acts under the color of state law. *See Schoolcraft v. Sullivan*, 971 F.2d 81, 88 (8th Cir. 1992); *Surrell v. Willman*, 16 F. Supp. 2d 1085, 1093 (D. Neb. 1998); *Laird v. Ramirez*, 884 F.Supp. 1265, 1282 (N.D. Iowa 1995); *Sorenson v. Concannon*, 893 F.Supp. 1469, 1483–84 (D. Or. 1994). If the Court finds Defendants' invocation of derivative immunity to be persuasive as a defense, Ryan respectfully requests the Court's leave to amend his causes of action.

## B. Ryan's causes of action do not present substantial federal questions.

The well-pleaded complaint rule "makes the plaintiff the master of the claim" so that "he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *G.G. by & through His Next Friend Collins v. Kansas City Missouri Sch. Dist.*, No. 14:19-CV-960, 2020 WL 3429039, at *4 (W.D. Mo. June 23, 2020). As Defendants state, *Gunn v. Minton*, 568 U.S. 251, 258 (2013) and *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313–14 (2005) authorize federal jurisdiction over a state law claim under certain circumstances. Doc. 1 at ¶ 29. Nevertheless, federal jurisdiction under *Grable* exists only for a "special and small category" of cases. *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006) ("*Grable* emphasized it takes more than a federal element 'to open the 'arising under' door. This case cannot be squeezed into the slim category *Grable* exemplifies.") (internal citations omitted).

Defendants characterize Ryan's theory of liability as turning on federal regulations and guidelines, as well as duties arising out of federal law. Doc. 1 at ¶ 31. However, Ryan pleads only state law claims and does not seek relief under federal law. His claims are viable even if they do not parallel the standards in the Agency's regulations. Instead, he alleges Defendants violated Missouri law and generally accepted medical standards and practices. Pet. ¶¶ 72, 106, 114, 122, 123. Ryan also alleges Defendants knowingly made inaccurate statements that harmed Ryan. Pet. ¶¶ 99, 111, 175. Fraudulent statements are actionable independent of directives as to how to perform a CE. *See Thomas v. Voa of N. Louisiana*, No. 17-CV-1196, 2017 WL 5762453, at *1 (W.D. La. Oct. 3, 2017) ("The fact that the misrepresentation/malpractice allegedly occurred in connection with a claim for federal social security benefits would not convert such a tort claim to one based on federal law.") (report and recommendation adopted, No. CV 17-1196, 2017 WL 5761603 (W.D. La. Nov. 28, 2017)).

11

Defendants argue that adjudication of whether they properly completed the CE requires consideration of how the Agency interprets and enforces its regulations. Doc. 1 at ¶ 32. While it is true that the Agency has standards regarding the adequacy of CE reports, those standards are not necessary to determine whether Defendants made inaccurate statements and whether they submitted a fraudulent report. The Agency's regulations are not coextensive, for example, with the standards described in Mo. Rev. Stat. § 334.100.2. Even if Defendants established that they fully complied with the Agency's standards, that would not resolve the question of whether they engaged in misconduct, fraud, misrepresentation, dishonesty, unethical conduct, or unprofessional conduct as defined by Missouri law. Defendants have failed to explain how common law notions of fraud and Missouri law regarding a physician's obligations necessarily turn on the construction of federal administrative law. *Sexton v. Potterfield*, No. 4:18-CV-04101-NKL, 2018 WL 5928060, at *2 (W.D. Mo. Nov. 13, 2018) ("To the extent Plaintiffs have a claim for fraud, it is clear that it does not arise under federal law, and Plaintiffs cannot confer federal jurisdiction by simply making references to federal statutes."). Here, Ryan has not referenced federal statutes. A factfinder could conclude that Defendants committed fraud without finding they violated the Agency's regulations. 20 C.F.R. § 404.1517 does not contain elements resembling Missouri state law's conception of fraud.

Defendants emphasize that the Agency's disability proceedings are a product of federal law. Doc. 1 at ¶ 47. However, Ryan does not challenge the Agency's interpretations of its regulations or seek to bypass the administrative process. He has not alleged that the Agency or DDS violated the law or issued a decision unsupported by substantial evidence. Indeed, he already exhausted administrative remedies and prevailed on those issues. *See Ryan v. Saul*, Case No. 4:19-cv-00772-BP, Doc. 21 (W.D. Mo. June 23, 2020). Ryan only seeks relief here against Defendants – not the Agency, the ALJ, or DDS. *See Missouri ex rel. Hawley v. Branson Duck Vehicles, LLC*, No. 6:18-

CV-03293-MDH, 2019 WL 320597, at *4 (W.D. Mo. Jan. 24, 2019) ("[T]he advertising may touch upon Defendants' representations regarding the safety and operation of the duck boats, and evidence regarding compliance with federal safety regulations may be relevant, but that does not bring the claims under a federal statute.").

Defendants contend there is a disputed federal issue because the parties disagree about whether their actions caused the Agency's ALJ to deny Ryan's claim and whether Defendant breached any duties. Doc. 1 at ¶ 45. However, Defendants do not indicate why the Agency's lengthy written decisions and administrative record are insufficient sources of evidence to resolve any disagreement. An ALJ gave great weight to Defendants' CE in denying Ryan's claim. Pet. ¶¶ 16, 63. In a judicial action before this Court, Judge Phillips found Defendants' CE was inadequate. On remand, an ALJ accordingly gave the opinion no weight and approved Ryan's claim. Pet. ¶¶ 18, 68. This case is a situation-specific dispute over the accuracy of a report generated by Defendants. It is not an effort to relitigate Ryan's disability claim.

Further, any federal question at issue here is not substantial. The mere fact of a state court petition raising federal issues is not sufficient to create federal jurisdiction. *Knox v. Mazuma Credit Union*, No. 15-0288-CV-W-ODS, 2015 WL 3407618, at *2 (W.D. Mo. May 27, 2015). Likewise, the fact that the case may affect a federal regulatory scheme is insufficient. There must be something specific about the federal issue that suggests an importance beyond the parties that justifies resort to the federal courts instead of allowing state courts to resolve the state cause of action. *Lester E. Cox Med. Centers v. Amneal Pharms., LLC*, No. 6:20-03152-CV-RK, 2020 WL 3171452, at *3 (W.D. Mo. June 15, 2020); *see also C.J. by & through Brady v. Truman Med. Ctr., Inc.*, No. 4:20-CV-00261-DGK, 2020 WL 3473651, at *3 (W.D. Mo. June 25, 2020). ("Although the information that is the subject of this litigation is protected by HIPPA, and although the disclosure of such information is arguably governed by the FTC Act, any reference to these

13

statutes is simply a standard upon which to measure TMC's negligence, not necessarily an assertion that TMC violated them and should be held liable. Indeed, only the administrative agencies overseeing these statutes are vested with the authority to determine and adjudicate violations.").

Ryan's claims do not implicitly challenge the validity of the Agency's regulations or call for their interpretation. He does not seek an order decreeing that Defendants violated federal law or that they be enjoined from performing future CEs. Rather, Ryan seeks relief from damages resulting from Defendants' fraudulent report. His Petition does not give rise to federal question jurisdiction.

## IV. Conclusion

For the foregoing reasons, federal officer removal under § 1442 is inappropriate. Ryan's causes of actions do not present substantial federal questions. Consequently, this Court lacks subject matter jurisdiction, and remand is warranted.

WHEREFORE, Ryan respectfully moves the Court to remand this matter to state court and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Kyle H. Sciolaro
Kyle H. Sciolaro, Mo. #64568
Derrick A. Pearce, Mo. #42793
BurnettDriskill, Attorneys
103 W. 26th Ave. Ste. 290
North Kansas City, MO 64116
P: 816.781.4836
F: 816.792.3634
ksciolaro@burnettdriskill.com
dpearace@burnettdriskill.com
ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on December 8, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

David A. Jermann                      #51389
Armstrong Teasdale LLP
2345 Grand Boulevard, Suite 1500
Kansas City, Missouri 64108-2617
Telephone: 816.221.3420
Fax: 816.221.0786
djermann@atllp.com

ATTORNEYS FOR DEFENDANT

                                                 /s/ Kyle H. Sciolaro
                                                 Kyle H Sciolaro. Mo. #64568