UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| MICHAEL JAMES RYAN, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 4:22-cv-00736-HFS ) |
| ELN ENTERPRISES, LLC, et al., | ) ) ) ) |
| Defendants. | ) |

**ORDER**

The underlying issue in this case involves the performance of consultative examinations as it relates to claims for disability insurance benefits. Plaintiff has filed a motion to remand (Doc. 11), defendants have filed opposition (Doc. 16), and plaintiff has filed his reply brief. (Doc. 19). Also pending are motions filed by Nevada Smith for leave to file an amicus curiae brief. (Docs. 28 and 29).

Background

On August 28, 2015, plaintiff, an Air Force and Army veteran, was injured in a car accident. (Petition: ¶ 29). He sustained disabling injuries and is unable to work, has undergone numerous treatments including surgeries, and requires the use of an assistive device to ambulate. (Id: ¶¶ 30-34).

On June 3, 2016, plaintiff applied for disability benefits from the Disability

1

Determination Services ("DDS") through the Social Security Administration ("SSA"); on July 29, 2016, the application was denied. (Id: ¶¶ 1-3, 35-36). Plaintiff appealed the decision, and on January 26, 2018, appeared before an Administrative Law Judge ("ALJ") who directed plaintiff to attend a Consultative Examination ("CE"), and DDS directed plaintiff to a facility operated by defendant ELN Enterprises, LLC, ELN Enterprises, LLC ("ELN"), doing business as Midwest CES ("Midwest CES"). (Id: ¶¶ 3, 5, 37-38). Midwest CES is owned and operated by defendants, David Frandsen and Jacob Johnsen. (Id: ¶ 7).

On March 10, 2018, plaintiff was examined by Sherief Garrana, MD, described by plaintiff as a "moonlighting otolaryngology resident," who opined, among other things, that plaintiff could dress and undress adequately, lift and carry personal belongings, the back and leg injuries began in 2015 due to an unknown etiology, had no difficulty getting up and down during the examination, and did not present with an assistive device. (Id: ¶¶ 12-14, 38-47). Plaintiff states that Dr. Garrana, did not have the necessary medical training in orthopedic medicine, and Midwest CES did not properly review his medical records and failed to comply with DDS guidelines. (Id: ¶¶ 51-61).

On December 3, 2018, the ALJ issued an unfavorable decision assigning great weight to Dr. Garrana's report; this decision was upheld by the Appeals

Council. (Id: ¶¶ 63-64). Plaintiff then filed suit in this court appealing the ALJ's unfavorable decision in *Ryan v. Saul, 19-772-BP*. (Id: ¶ 66). On June 23, 2020, Chief Judge Philips reversed the Commissioner's final decision and remanded the case for further proceedings for (1) the Commissioner to arrange a consultative exam to be performed by an orthopedist or an orthopedic surgeon which should include a review of plaintiff's medical records, and (2) the Commissioner should then arrange for a hearing so that the ALJ can reconsider plaintiff's residual functional capacity, including his ability to meet the sitting requirements for sedentary work. (Id: ¶¶ 66-67, see also, Case 19-772, Doc. 21, p. 4). Following the remand hearing, on October 23, 2020, the ALJ gave no weight to Dr. Garrana's report and found plaintiff to be disabled. (Id: ¶ 68).

Plaintiff alleges that due to defendants' actions he has suffered unnecessary legal fees, the loss of time value of money, and needless mental anguish. (Id: ¶ 69). Plaintiff then commenced the instant action in the Circuit Court of Jackson County, Missouri, against defendants asserting:

Count I – Tortious Interference with a Business Expectancy;

Count II – Damages under the Missouri Merchandising Practices Act;

Count III – Fraudulent Misrepresentation;

Count IV – Negligent Misrepresentation;

3

Count V – Negligence per se;

Count VI – Defamation;

Count VII – Civil Conspiracy;

Count VIII – Tort of Outrage; and,

Count IX – Negligent Hiring, Training and Supervision

Although plaintiff raised only state law claims and stipulated that the damages sought did not exceed $75,000 (Doc. 1-1, ¶¶ 27-28), defendants removed the case asserting federal officer removal jurisdiction under 28 U.S.C. § 1442(a) based on the colorable federal defense of derivative sovereign immunity, and federal question jurisdiction under 28 U.S.C. § 1331.[1]

Federal Officer Removal

The federal officer removal statute grants independent jurisdictional grounds over cases involving federal officers where a district court otherwise would not have jurisdiction. Buljic v. Tyson Foods, Inc., 22 F.4th 730, 738 (2021); citing, Jacks v. Meridian Res. Co., LLC, 701 F.3d 1224, 1230 (8th Cir. 2012); overruling, 2011 WL 13189849 (W.D.Mo.)[2]. The statute authorizes removal of any

---

[1] Further pertinent "background" is contained in a ruling this week by Judge Kays in *U.S. ex rel. Murrill v. Midwest CES, LLC*, 21-cv-00371-DGK.
[2] Holding, *inter alia*, that FEHBA program carriers contracting with the federal government to provide health care insurance for federal employees are not unrelated and wholly separate business entities merely doing business in a highly regulated arena, but rather conduct business under the delegation of the federal government. 701 F.3d, at 1234.

civil action commenced in state court that is brought against an officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office. Buljic, at 738, citing, 28 U.S.C. § 1442(a)(1).

Because defendants here are not themselves a federal officer or agency, they must show they acted under a federal officer or agency. Buljic, at 738. This threshold showing requires defendants to establish that: (1) they acted under the direction of a federal officer; (2) there is a causal connection between their actions and the official authority; (3) defendants have a colorable federal defense to plaintiff's claims; and (4) defendants are a person within the meaning of the statute. Id.

Discussion

Plaintiff alleges that the Social Security Administration ("SSA") contracts with Disability Determination Services ("DDS"), a Missouri state entity acting under the authority of the Missouri Dept. of Elementary and Secondary Education, to determine medical eligibility for Missourians who have filed for disability benefits. (Doc. 1-1, State Court Petition ¶ 2). Defendants do not deny this allegation (Doc. 10, Answer ¶¶ 1-2), and they admit that defendant Midwest CSE contracts with DDS to perform consultative examinations on behalf of DDS

5

and that defendants Frandsen and Johnsen own Midwest CES. (Doc. 10, ¶¶6-7). Defendants claim that a template is provided to physicians by SSA and DDS for performance of the consultative exams. (Doc. 10, ¶ 9).

Plaintiff argues that defendants were not "acting under" a federal officer or agency because their contract is with DDS, and not with the federal government. (Doc. 11, Mot. To Remand, p. 5). Plaintiff points out that Dr. Garrana voluntarily performed the consultative exam for defendant Midwest CES, and it is unclear whether defendants contracted with any other entity. (Id).

Defendants counter that the SSA requires consultative exams in its review of disability claims, and in performing those exams they were "acting under" through a contract delegation with the DDS, a state agency federally funded by the federal government. (Doc. 16, Opp. Sugg. pp. 1-2). Defendants claim federal officer removal is appropriate because they were subject to pervasive federal regulation and their "purpose is to assist and carry out a duty that would otherwise be mandated to be performed by SSA." (Doc. 16, p.2).

Citing 42 U.S.C. § § 401 et seq, in general terms, defendants claim they "were enlisted by the federal government" to fulfill the basic task of performing consultative exams which was imposed on the SSA which would otherwise have to perform itself. (Doc. 16, p. 3). According to defendants, they were "delegated"

6

authority to provide services the federal government needs to carry out the basic governmental task of adjudicating disability benefits applications. (Id, pp. 3-4).

In support of his argument that defendants were not "acting under" a federal agency, plaintiff cites Adelman v. Discover Card Servs., Inc., in which the plaintiff alleged that an employee of Utah's DDS, Alan Curtis, wrongfully assessed his confidential information and published it; plaintiff and Curtis ultimately settled plaintiff's claims against Curtis individually. 915 F.Supp. 1164 (D.Utah 1996).

However, based on the relationship between DDS and SSA, the plaintiff also sued the United States, alleging that the United States was liable for Curtis's actions under the tax code, 26 U.S.C. § 6103, and the Privacy Act, 5 U.S.C. § 552a. Id. (federal law governing the DDS-SSA relationship establishes procedures to be followed and standards to be met); citing, 42 U.S.C. § 421[3]; 20 C.F.R. § 404.1601 et seq. The SSA has promulgated additional procedures and standards through the Program Operating System Manuel (" POMS"). Id, at 1164.

The Adelman court found that Curtis, the DDS employee, was not an "employee" of the United States because, among other things, DDS is a state agency working as an independent contractor to administer a federal program,

---

[3] Provides, in relevant part, that the determination of whether or not an individual is under a disability shall be determined by a State agency in accordance with regulations and guidelines promulgated by the Commissioner of Social Security.

7

not a federal agency. Id, at 1165. In distinguishing an agency from a contractor in the Federal Tort Claims Act ("FTCA") context, the Adelman court considered the analysis set forth by the Supreme Court in United States v. Orleans, 425 U.S. 807, 814 (1975). Id, at 1165. In Orleans, the state agency received 100% of its funding from the federal government, conducted only programs formulated and funded by the federal government, and was subject to close supervision by the federal government in all its activities; nevertheless, and despite these controls, the Orleans Court held, among other things, that the state agency was not transformed into a federal agency. Adelman, 915 F.Supp, at 1165; Orleans, 425 U.S., at 811, 816. The Orleans Court reasoned that the determinative question was not whether the state agency received federal money and was required to comply with federal standards and regulations, but whether its day-to-day operations were supervised by the Federal Government. Id; Orleans, at 815.

Using this analysis, the Adelman court held that although the federal law concerning the DDS-SSA relationship dictates the results to be accomplished by DDS, mandates certain levels of performance, and requires compliance with certain procedures and regulations, it does not supervise the detailed physical performance of DDS employees nor DDS' day-to-day operations. Adelman, at 1165. The regulations defining the parameters of the DDS-SSA relationship

provide: The SSA will provide program standards, leadership, and oversight. Id.

The court further noted that pursuant to 20 C.F.R. § 404.1603(a), it was the state's responsibility to provide management and qualified personnel, and in the event the procedures or standards were not met, the authority of the federal government was limited to terminating its relationship with the state agency and make disability determinations itself. Id, at 1166. Further, the SSA does not have the authority to reprimand or terminate employees or to change day-to-day operations to ensure compliance with the regulations. Id. The court concluded that a strict construction of "employee of the United States" cannot include employees of state agencies administering a federal program. Id, at 1166. Because the court determined that DDS is an independent contractor and not a federal agency, there was no justification to consider Curtis an "employee of the United States." Id.

Here, there is no direct contractual lineage between the federal agency, SSA, and defendants, and it bears repeating that 42 U.S.C. § 421 clearly states that decisions regarding the existence of a disability, the onset date, as well as the date the disability ceases "shall be made by a State agency." Further, 20 C.F.R. § 404.1601 describes the standards of performance and administrative requirements and procedures for States making determinations of disability for

9

the Commissioner under Title II of the Act.

If anything, defendants' duties and responsibilities result from their contractual relationship with the DDS, a state agency. Defendants' reliance on the consultative exam directions in § 404.1517 does not provide support for their claim of "acting under" a federal superior, for that regulation is clearly between the SSA and the DDS.[4] Defendants cite Jacks as persuasive authority in its finding "delegation" as opposed to "regulation" supports their argument that their duties were delegated by the SSA. (Doc. 16, Opp. Sugg. p. 3). However, in Jacks, unlike here, a federal agency, Office of Personnel Management "OPM" was tasked by the Federal Employees Health Benefits Act of 1959 "FEHB" with negotiating contracts with private insurance carriers to provide an array of health-care plans. Jacks, 701 F.3d, at 1227. Thereby creating a direct contractual relationship between the OPM and Meridian Resource Co., the defendant insurance carrier; a relationship not evidenced here.[5]

Additional caselaw provides relevant guidance rendering defendants'

---

[4] Section 404.1517 of the Code of Federal Regulations states in part: If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests. We will pay for these examinations.

[5] Cf., In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Phila, 790 F.3d 457, 469 (3rd Cir. 2015)(explaining that a nonprofit community defender acts under a federal officer by representing indigent federal defendants in part because it is delegated authority from the federal government and provides a service that the federal government would otherwise have to provide itself), cited by, Buljic, 22 F. 4th, at 739. Cf., also, Issacson v. Dow Chem. Co., 517 F.3d 129, 136-37 (2nd Cir. 2008)(finding "acting under" element satisfied where defendant chemical companies contracted with the federal government to provide a product – Agent Orange – that the government otherwise would have had to produce itself).

position unavailing. In Doe v. BJC Health System, 2023 WL 369427 (E.D.Mo.), plaintiffs filed a putative class action alleging that the defendant health system violated patient privacy by causing the transmission of personal and medical information to social media platforms. Although state law claims were asserted, the defendant removed the case claiming federal subject matter jurisdiction existed under the federal officer removal statute. Id, at * 1.

The defendant claimed, as defendants here, that it was assisting the federal government in carrying out the federal mission of making electronic health records available to patients through its participation in the Promoting Interoperability program.[6] The court in BJC framed the issue as whether the defendant was "acting under" a federal officer or agency by virtue of its voluntary participation in a federal program; noting that while other district courts outside the circuit might disagree, the court concluded that the answer was no. Id.

Similar to the circumstances at bar, there was no evidence that the defendant in BJC Health, was required by federal law to participate in the program and the federal government had not contracted with BJC to create

---

[6] In 2009, Congress enacted the Health Information Technology for Economic and Health Act, which created the Office of the National Coordinator giving it the responsibility of coordinating and collaborating with the private healthcare sector with funds for the Dept. of Health and Human Svcs. To invest in infrastructure necessary to promote the electronic exchange and use of health information for each individual in the United States. BJC Health System, 2023 WL 369247, at *3. Formerly referred to as the Meaningful Use Program, a voluntary federal program that offers incentive payments to healthcare providers who meet certain program requirements. Id.

11

websites or patient portals. Id, at *2. And, despite the federal government's expressed desire to encourage the implementation of interoperable health information technology infrastructure, the statute did not authorize or obligate the federal government to create such an infrastructure itself. Id, at *4. Therefore, the court concluded that BJC's creation of a website and online patient portals failed to fulfill a basic government task that the government itself would otherwise be required to carry out. Id. (distinguishing the case from Jacks, in which the defendant was contracted by the federal government to provide health insurance to federal workers, a task imposed on the government by statute).

Further guidance may also be found in Dyer v. Crowley Logistics, Inc., where the United States Government entered into a contract with defendant Crowley Liner Svcs. and/or Crowley Logistics Inc.to serve as the motor carrier to deliver a load of military meals, who in turn entered into contractual agreements with other defendant companies to provide additional services related to the delivery. 2022 WL 16636233 * 1 (W.D.Mo.). Following a tractor-trailer accident resulting in a fatality, family beneficiaries of the deceased asserted claims of wrongful death and related claims against the defendants in state court, and defendants removed the case claiming jurisdiction under the federal officer removal statute. Id, at *2. Judge Bough found that no evidence was produced showing that a government

12

contract or official required the selection of the offending defendants[7], and Crowley Logistics did not produce any evidence that it lacked discretion in selecting the offending defendants. Id, at *3.

At bar, and despite their argument to the contrary, defendants here have produced no evidence of a contractual relationship with SSA, or that SSA required the selection of the consultative examiner, Dr. Guarna. See, Dyer, at *3 (Judge Bough concluding that even when the federal government exercises some control over the underlying facts, removal is improper if the private defendant made the actual decisions that formed the basis of the plaintiff's claims). Consequently, defendants have failed to establish that they were "acting under" government control in their selection of physicians, including Dr. Garrana, to conduct consultative exams.

The second element of the federal officer removal statute, causal connection, requires a connection between the charged conduct and the asserted official authority. Graves v. 3M Company, 17 F.4th 764, 769 (8th Cir. 2021). The causal connection element stems from the § 1442(a)(1) requirement that the person seeking removal is being sued for or relating to any act under color of such

---

[7] Defendant WBTL LLC who agreed to pick up the load from Albany, Georgia and deliver the load to Fort Leonard Wood; WBTL then assigned defendant Kevin Dixon who had numerous criminal convictions to pick up and deliver the load. Dyer, at *1.

office.

Even though the SSA renders decisions regarding claims for disability benefits, plaintiff's claims arise from alleged negligence by defendants in the process and performance of consultative exams, and defendants had discretion in deciding the procedures for those exams, therefore they were not "acting under" a federal officer or agency. Crowley Logistics, 2022 WL 16636233, at *3(if the plaintiff's claims arise from delivery-related injuries, and if the private company had discretion in deciding how to get the package to its destination on time, removal is not warranted).

Defendants are required to satisfy each element of the federal removal statute, and since they fail to establish that they were "acting under" a federal officer or agency, they also fail to meet the second element requiring a causal connection between the charged conduct and asserted official authority. Id; citing Graves v. 3M Company, 17 F.4th 764, 769 (8th Cir. 2021). This finding is sufficient to remand this action to state court without discussion of the remaining elements. Doe, I v. BJC Health System, 2023 WL 369427 *5 (E.D.Mo.)(this "causal connection" requirement remains the test in the Eighth Circuit); citing, Buljic, 22 F.4th, at 742. In so finding, it is unnecessary to address the remaining arguments of the parties except to clarify that defendant's arguments as to a "causal

14

connection" were insufficient. Crowley Logistics, 2022 WL 16636233, at *3; Buljic, 22 F.4th, at 742; see also, BJC Health System, 2023 WL 369427, at *5.

Federal Question Jurisdiction

Generally, removal based on federal question jurisdiction is based on the well-pleaded complaint rule which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint. Lincoln Savings Bank v. Tyson Foods, Inc., 2023 WL 2119476 *2 (N.D.Iowa). The rule also makes plaintiff the master of the claim, allowing the plaintiff to avoid federal jurisdiction by exclusive reliance on state law. Id.

The vast majority of cases brought under federal question jurisdiction are those in which federal law creates the cause of action, however, a federal question is also raised when the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. Id; citing, Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 308, 314 (2005)(explaining that for federal courts to have jurisdiction, the state law claim must turn on an actually disputed and substantial issue of federal law).[8]

---

[8] Grable involved real property owned by Grable that the Internal Revenue Service ("IRS") seized to satisfy a federal tax deficiency. 545 U.S., at 310. Grable received notice of the seizure by certified mail before the IRS sold the property to Darue, and Grable then sued Darue in state court to quiet title, asserting that Darue's record title was invalid because the IRS failed to convey the seizure notion properly under 26 U.S.C. § 6335(a). Id. Darue removed the case, alleging that Grable's title depended on the interpretation of § 6335(a), and invoked federal question jurisdiction. Id. The Court held that removal was proper because the statute's meaning was an important federal law issue that sensibly belonged in a federal court and the question of adequate notice was the only issue in the case.

As in Lincoln Savings, the Petition here does not assert federal claims, rather, it asserts common law tort claims involving defendants' alleged negligent conduct. Defendants seemingly acknowledge the absence of federal claims, but claim this was accomplished through "artful pleading," and that federal law permeates the allegations. (Doc. 16, p. 13). Defendants' reliance on 20 C.F.R. § 404.1633 in support of this contention is misplaced, for as clearly acknowledged by defendants, this regulation requires the DDS to comply with the regulations and guidelines promulgated by the SSA. (Id).

Plaintiff notes that the allegations in the Petition assert only state law claims, raises no allegations related to federal law, and seeks no relief under federal law. Even though he filed suit after his claim for social security benefits was denied by the Commissioner, plaintiff's cause of action asserts tort law claims against defendants only as to alleged negligence in the performance of the consultative exam. And, plaintiff argues that, contrary to defendants' contention, this is an insufficient basis to resolve the matter in federal court. Thomas v. Voa of North Louisiana, 2017 WL 5762453 *1 (W.D.La.)[9] (the fact that the misrepresentation/malpractice allegedly occurred in connection with a claim for

---

Grable, at 315.

[9] In this case the plaintiff, appearing in forma pauperis, commenced a civil action against defendant for alleged misrepresentation and malpractice in its representation of plaintiff in connection with a claim for social security benefits. 2017 WL 5762453, at *1.

social security benefits does not convert such a tort claim to one based on federal law); citing, Gunn v. Minton, 133 S.Ct., at 1059.

Defendants also argue, in reliance on 20 C.F.R. § 404.1633, that federal law "permeates the consultative examination process, including how the CE is conducted and the CE report written." (Doc. 16, Opp. Suggs., p. 13). Contrary to defendants' contention, § 404.1633 expressly applies to Policies and operating instructions with regard to SSA's relationship with the state agency – here, the DDS. Likewise, defendants' continued reliance on other various provisions of the CFR is unavailing since the quoted provisions apply to the SSA. (Id).

Defendants also cite numerous allegations in the Petition that purportedly demonstrate plaintiff's intent to incorporate federal law; but the cited allegations repeatedly refer to defendants' and Dr. Garrana's substandard procedures and improper performance of the consultative exam. Lincoln Savings, 2023 WL 2119476, at *2(finding that references to CDC guidelines and OSHA standards in the Petition are for purposes of measuring defendants' negligence and not claims for relief under the CDC or OSHA).

Defendants' reliance on Wullschleger v. Royal Canain U.S.A., Inc., 953 F.3d 519 (8th Cir. 2020), also fails to support defendant's contention that federal law permeates the Petition. (Doc. 16, p. 13). As noted by the court in Lincoln Savings,

the facts in Wullschleger are distinguishable because there the plaintiff's claims relied on non-compliance with federal law in "paragraph after paragraph" to such an extent that dependence on federal law permeated the allegations such that the common law tort claims could not be adjudicated without reliance on and explication of federal law. 2023 WL 2119476, at *3.

Because defendants here were not subject to any federal directive or guidance or undertaking a governmental task, there are no issues of federal law and national concern to be resolved by a federal court. Id; see also, VOA of North Lousiana, 2017 WL 5762453, at * 1.

In sum, there is no evidence demonstrating jurisdiction pursuant to the federal officer removal statute 28 U.S.C. § 1442(a) or federal question under 28 U.S.C. § 1331; therefore, defendants have failed to satisfy their burden of establishing federal subject matter jurisdiction.

Amicus Brief

Nevada Smith, has filed motions seeking leave to file an amicus brief in which she asserts claims of alleged malfeasance by Dr. Garrana, Midwest, and others. (Docs. 28-29). Defendants oppose the relief requested, and state that Smith is a frequent filer in courts around the country, some of which have barred him from future filings to intervene in cases in which he has no apparent interest.

(Doc. 30, Opp. Suggs. Pp. 1-2); citing, Flaws v. AKAL Security, Inc., 2020 WL 3317611 *2 (W.D.Mo.)(Smith is permanently enjoined from the filing of any motion, document, amicus brief, or other material in this case without first obtaining leave of court).

Factors district courts consider in determining whether to admit or deny the presence of an amicus brief include: (1) whether the information offered through the amicus brief is timely and useful; and (2) whether the entity or individual seeking to file the amicus brief is an advocate for one of the parties. Flaws, 2020 WL 3317611, at *1.

Review of the voluminous documents reveal an intent by Smith to piggy-back on allegations by plaintiff regarding the alleged incompetence and/or negligence of Dr. Garrana who is not a party in this action. Apparently, Smith has filed a complaint (purportedly on plaintiff's behalf) with the Missouri Board of Healing Arts against Dr. Garrana (Doc. 28, pp.14-18). Smith claims that this complaint mirrors the Petition filed by plaintiff in state court. (Doc. 28, p. 2). Contrary to Smith's claim, Dr. Garrana was not a named defendant in either the state court action, or the instant case removed to this court. Further, Smith fails to offer any useful information on the issue before this court regarding remand, and since Dr. Garrana is not a named defendant in this case there is no evidence

of advocating for plaintiff against Dr. Garrana. Thus, Smith's motions will be denied.

Accordingly, plaintiff's motion to remand (Doc. 11) is GRANTED, and the Clerk of the Court is directed to REMAND this case to the Circuit Court of Jackson County, Missouri. It is further

ORDERED that the motions for leave to file an amicus brief (Docs. 28 and 29) are DENIED.

/s/   Howard F. Sachs

**HOWARD F. SACHS**
UNITED STATES DISTRICT JUDGE

April 10, 2023

Kansas City, Missouri

20

Case 4:22-cv-00736-HFS   Document 32   Filed 04/10/23   Page 20 of 20